IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| 3SHAPE A/S TRIOS A/S, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 18-1332-LPS |
| | ) | |
| ALIGN TECHNOLOGY, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT ALIGN TECHNOLOGY, INC.'S OBJECTIONS
TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
REGARDING ALIGN'S MOTION TO DISMISS 3SHAPE'S AMENDED COMPLAINT**

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendant*

OF COUNSEL
Thomas A. Counts
Thomas Brown
Abigail Wald
Grant Margeson
Paul Hastings LLP
101 California Street
Forty-Eighth Floor
San Francisco, CA 94111
(415)856-7000

Noah Pinegar
PAUL HASTINGS LLP
875 15th Street, N.W.
Washington, DC 20005
(202)551-1700

Dated: June 3, 2020

## TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................. 1

SUMMARY OF ARGUMENT ........................................................................................ 1

STANDARD OF REVIEW .............................................................................................. 1

ARGUMENT ..................................................................................................................... 1

I.      THE REPORT AND RECOMMENDATION ERRONEOUSLY DEFERRED
        ANALYZING SUBSTANTIAL FORECLOSURE, NECESSARY TO PLEAD
        *DE FACTO* EXCLUSIVE DEALING ................................................................. 1

II.     THE REPORT AND RECOMMENDATION APPLIED THE WRONG LEGAL
        STANDARD FOR BUNDLED DISCOUNTING UNDER *LEPAGE'S* .......................... 8

CONCLUSION ................................................................................................................. 10

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Barr Labs., Inc. v. Abbott Labs.*,
  978 F.2d 98 (3d Cir. 1992)..................................................................................3, 7

*Bell Atlantic v. Twombly*.
  550 U.S. 544 (2007).............................................................................................8

*Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*,
  509 U.S. 209 (1993).........................................................................................9, 10

*Burtch v. Milberg Factors, Inc.*,
  662 F.3d 212 (3d Cir. 2011)................................................................................7

*CAE Inc. v. Gulfstream Aero. Corp.*,
  203 F. Supp. 3d 447 (D. Del. 2016)..................................................................2, 7

*Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*,
  140 S.Ct. 1009 (2020).......................................................................................6, 8

*Eisai, Inc. v. Sanofi Aventis U.S.*,
  LLC, 821 F.3d 394 (3d Cir. 2016) ..................................................................2, 3, 7

*GN Netcom Inc. v. Plantronics Inc.*,
  C.A. No. 12-1318-LPS (D. Del. Oct. 12, 2012) .......................................................6

*GN Netcom, Inc. v. Plantronics, Inc.*
  967 F. Supp. 2d 1082, 1085-87 (D. Del. 2013) .......................................................6

*Int'l Constr. Prod. LLC v. Caterpillar Inc.*,
  C.A. No. 15-108-RGA, 2016 WL 264909 (D. Del. Jan. 21, 2016) ...............................4, 6, 7

*Jefferson Par. Hosp. Dist. No. 2 v. Hyde*,
  466 U.S. 2 (1984) (O'Connor, J., concurring) .........................................................2

*Larry Pitt & Assocs.*,
  57 F. Supp. 3d 445 (E.D. Pa. 2014) ..................................................................4, 7

*LePage's Inc. v. 3M*,
  324 F.3d 141 (3d Cir. 2003)...............................................................................8, 9

*Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*,
  555 U.S. 438 (2009)........................................................................................9, 10

*PNY Techs., Inc. v. SanDisk Corp.*
    No. 11-CV-04689-WHO, 2014 WL 1677521 (N.D. Cal. Apr. 25, 2014) ................................5

*Pro Search Plus, LLC v. VFM Leonardo, Inc.*,
    No. SACV 12-2102-JST ANX, 2013 WL 3936394 (C.D. Cal. July 30, 2013).......................5

*Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*,
    614 F.3d 57 (3d Cir. 2010)..................................................................................................2

*Rheumatology Diagnostics Lab., Inc. v. Aetna, Inc.*,
    No. 12-CV-05847-WHO, 2013 WL 5694452 (N.D. Cal. Oct. 18, 2013)................................5

*Roxul USA, Inc. v. Armstrong World Indus., Inc.*,
    C.A. No. 17-1258-MAK, 2019 WL 1109868 (D. Del. Mar. 8, 2019)......................................3

*Shire US, Inc. v. Allergan, Inc.*,
    375 F. Supp. 3d 538 (D.N.J. 2019) ......................................................................................4

*Sterling Merch., Inc. v. Nestlé, S.A.*,
    656 F.3d 112 (1st Cir. 2011) ..............................................................................................3

*Tampa Elec. Co. v. Nashville Coal Co.*,
    365 U.S. 320 (1961)...........................................................................................................2

*ZF Meritor v. Eaton Corp.*,
    Final Jury Instructions, *ZF Meritor v. Eaton Corp.*, C.A. No. 06-623-SLP (D.
    Del. Oct. 7, 2009), D.I. 214 ............................................................................................3, 6

*ZF Meritor v. Eaton Corp.*,
    696 F.3d 254 (3d Cir. 2012).................................................................................... *passim*

## Statutes

28 U.S.C. § 636(b)(1) ..............................................................................................................1

Sherman Act...................................................................................................................5, 9

## Other Authorities

D. Del. LR § 72.1(b) ................................................................................................................1

Fed. R. Civ. P. § 12(b)(6)........................................................................................................1

Fed. R. Civ. P. § 72 ................................................................................................................1

Fed. R. Civ. P. § 72(b)(3)........................................................................................................1

## INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 72, District of Delaware Local Rule 72.1(b), and 28 U.S.C. § 636(b)(1), Defendant Align Technology, Inc. ("Align") files these objections to the Magistrate Judge's May 20, 2020 Report and Recommendation (D.I. 77).  Align respectfully requests that the Court reject the Report and Recommendation and dismiss 3Shape's claims.

## SUMMARY OF ARGUMENT

The Report and Recommendation ("R&R") is flawed for two primary reasons: (1) failing to analyze substantial foreclosure, a key element of pleading a *de facto* exclusive dealing theory of conduct; and (2) applying an incorrect legal test for a bundled discounts theory.  A fact-intensive inquiry is required to appropriately test for plausibility upon a Federal Rule of Civil Procedure 12(b)(6) motion.  Here, 3Shape alleges only that it lost out on two customer contracts and it could lower its prices to compete with Align's multi-product discounts, but would prefer not to.  This warrants dismissal.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 72 provides that the Court determines "*de novo* any part of the magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b)(3).  Per 28 U.S.C. § 636(b)(1), the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations" of the R&R.

## ARGUMENT

**I.      THE REPORT AND RECOMMENDATION ERRONEOUSLY DEFERRED ANALYZING SUBSTANTIAL FORECLOSURE, NECESSARY TO PLEAD *DE FACTO* EXCLUSIVE DEALING**

In recommending denial of Align's Motion to Dismiss, the R&R failed to analyze the Amended Complaint's allegations to determine whether it plausibly alleges substantial foreclosure, necessary to plead *de facto* exclusive dealing under *ZF Meritor*.  The R&R instead

held that "[w]hether the foreclosure was in fact 'substantial' is a conclusion that does not need to be reached." (D.I. 77 at 13.) This constitutes legal error. The Amended Complaint fails to plausibly allege that two Align contracts with DSOs (that committed mere "hundreds" of dental professionals out of 155,000) constitute unlawful exclusive dealing. (D.I. 63 ¶ 47; D.I. 67 at 9.)

"Exclusivity agreements are generally permissible and are 'presumptively legal.'" *CAE Inc. v. Gulfstream Aero. Corp.*, 203 F. Supp. 3d 447, 454 (D. Del. 2016) (quoting *E & L Consulting, Ltd. v. Doman Indus.*, 472 F.3d 23, 30 (2d Cir. 2006)); *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 76 (3d Cir. 2010). Exclusive dealing is not only permissible, it is ***encouraged*** under antitrust law in circumstances where, as here, the exclusive provider is chosen though a competitive process. *See Hoosier Racing*, 614 F.3d at 83.

An exclusive dealing contract runs awry of antitrust law only when it substantially forecloses a large share of the relevant market. *Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 327 (1961) (exclusive dealing is only actionable if "the contract will foreclose competition in a substantial share of the line of commerce affected"). Whether foreclosure is substantial is a legal conclusion about economics: "[i]n some cases, a dominant firm may be able to foreclose rival suppliers from a large enough portion of the market to deprive such rivals of the opportunity to achieve the minimum economies of scale necessary to compete." *ZF Meritor v. Eaton Corp.*, 696 F.3d 254, 271 (3d Cir. 2012). An action based on exclusive dealing must allege enough detail to show that the exclusive contracts are not instead procompetitive, *i.e.*, encouraged under antitrust law. *Eisai, Inc. v. Sanofi Aventis U.S., LLC*, 821 F.3d 394, 403 (3d Cir. 2016) ("To demonstrate substantial foreclosure, a plaintiff 'must both define the relevant market and prove the degree of foreclosure.'").

To understand the degree of foreclosure of the relevant market caused by exclusive dealing, a court considers relevant factors, including "the number of sellers and buyers in the market, the volume of their business, and the ease with which buyers and sellers can redirect their purchases or sales to others." *Jefferson Par. Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 45 (1984) (O'Connor, J., concurring); *see also* Final Jury Instructions at 36, *ZF Meritor v. Eaton*

*Corp.*, C.A. No. 06-623-SLP (D. Del. Oct. 7, 2009), D.I. 214, *aff'd* 696 F.3d 254 (3d Cir. 2012) (Ex. A).  Courts use the "rule of reason" to analyze the competitive circumstances of the relevant market, recognizing that factual circumstances distinguish price competition from potentially actionable large-scale foreclosure.  *See, e.g.*, *ZF Meritor*, 696 F.3d at 271-72 (quoting *Barr Labs., Inc. v. Abbott Labs.*, 978 F.2d 98, 111 (3d Cir. 1992)) ("[C]ourts consider not only the percentage of the market foreclosed, but also take into account 'the restrictiveness and the economic usefulness of the challenged practice in relation to the business factors extant in the market.'").

     The degree of foreclosure—the line between procompetitive and potentially anticompetitive exclusivity—is a factor of the percentage of the market foreclosed and the market effects of that exclusive dealing.  *See id.*  Courts generally require 40% market foreclosure to be actionable.  *Roxul USA, Inc. v. Armstrong World Indus., Inc.*, C.A. No. 17-1258-MAK, 2019 WL 1109868, at *8 (D. Del. Mar. 8, 2019) ("Traditionally a foreclosure percentage of at least 40% has been a threshold for liability in exclusive dealing cases . . . ."); *see also Sterling Merch., Inc. v. Nestlé, S.A.*, 656 F.3d 112, 123-24 (1st Cir. 2011) (quoting *Stop & Shop Supermarket Co. v Blue Cross & Blue Shield of R.I.*, 373 F.3d 57, 68 (1st Cir. 2004) ("'[F]oreclosure levels are unlikely to be of concern where they are less than 30 or 40 percent,' and while high numbers do not guarantee success for an antitrust claim, 'low numbers make dismissal easy.'").  Courts then evaluate the specific market conditions to understand if the "degree of foreclosure" resulting from exclusive dealing is "substantial."  *See Eisai*, 821 F.3d at 403.

     Third Circuit cases provide guideposts for when exclusive contracts may incur antitrust liability.  In *ZF Meritor*, the Third Circuit cited long-term requirements contracts with all purchasers in the market, each demanding purchases of 70-97.5% of the purchaser's needs.  696 F.3d at 265-66.  At the other end of the spectrum, the court held that neither 15% foreclosure, *see Barr Labs.*, 978 F.2d at 111, nor "a few dozen hospitals out of almost 6,000" constituted

substantial foreclosure, *Eisai*, 821 F.3d at 405.  3Shape's allegations suggest, at most, the possible foreclosure of 1 percent of the alleged U.S. market.  (*See* D.I. 63 ¶ 47; D.I. 67 at 9.)

Courts in the Third Circuit have granted motions to dismiss in cases where, as here, substantial foreclosure is not plausibly alleged in the complaint.  To adequately plead substantial foreclosure, a complaint must include sufficient detail regarding the nature of the contracts and their potentially anticompetitive effects.  *Int'l Constr. Prod. LLC v. Caterpillar Inc.*, C.A. No. 15-108-RGA, 2016 WL 264909, at *5 (D. Del. Jan. 21, 2016) (quoting *ZF Meritor,* 696 F.3d at 271).  A plaintiff "need not prove its case in the complaint, but it must allege facts sufficient to 'plausibly suggest an entitlement to relief.'"  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009)).  Absent facts alleged to ascertain the practical effects of the exclusive contracts, a complaint "has failed to adequately plead substantial foreclosure."  *Id.* ("The Court cannot simply hypothesize that some set of facts could support a basis for relief to be granted.").

In *Larry Pitt & Assocs. v. Lundy Law, LLP*, for example, the Eastern District of Pennsylvania granted a motion to dismiss after finding that access to a sales channel exclusive to a rival was not "necessary to the survival of competitors in the [relevant] market," noting that the arrangement did not "lessen competition or create barriers to entry into the [relevant] market." 57 F. Supp. 3d 445, 454 (E.D. Pa. 2014).  The court noted that "[c]ourt[s] must look at the factual allegations regarding the restrictiveness of the challenged practice, the economic usefulness of the practice, and whether the challenged practice creates barriers to entry, and can also consider factors such as the duration of the agreement, ease of termination, alternative outlets for competitors, and justifications of the buyer and seller for the arrangement."  *Id.* (citing *ZF Meritor*, 696 F.3d at 327).[1]

District courts in other circuits have likewise granted motions to dismiss when a plaintiff fails to plead the practical effect of exclusive contracts.  In *Rheumatology Diagnostics Lab., Inc.*

---

[1] In *Shire US, Inc. v. Allergan, Inc.*, the District of New Jersey noted that the most important factor in granting a motion to dismiss for failure to state a claim was the relatively short duration of contracts, contrasted against those in *ZF Meritor*.  375 F. Supp. 3d 538, 558 (D.N.J. 2019) ("Plaintiff has not plausibly pled the requisite anticompetitive conduct.").

*v. Aetna, Inc.*, the Northern District of California granted a motion to dismiss, noting that the plaintiff failed to show substantial foreclosure by merely alleging the existence of an exclusive dealing agreement without demonstrating whether the agreement foreclosed a ***substantial share*** of the market.  *See* No. 12-CV-05847-WHO, 2013 WL 5694452, at *12 (N.D. Cal. Oct. 18, 2013) ("It may very well be that [the excluded competitors] constitute a 'substantial share' of the relevant market or markets, but with only what the plaintiffs present, the [c]ourt cannot tell.").  Because the allegations did not provide necessary context, the claims failed.  *Id.* ("[T]he plaintiffs' [complaint] is nonetheless completely devoid of any context in which to evaluate their claims.").

In *Pro Search Plus, LLC v. VFM Leonardo, Inc.*, a district court granted a motion to dismiss Sherman Act claims based on exclusive dealing where "[plaintiff] had alleged only the existence of the exclusivity agreements and [defendant]'s market power."  No. SACV 12-2102-JST ANX, 2013 WL 3936394, at *4 (C.D. Cal. July 30, 2013).  As part of its analysis, that court noted the short duration (2-5 years) and easy terminability (10 days – 1 year notice) of the contracts, noting such agreements "can promote competition."  *Id.* at *2, *4.

In *PNY Techs., Inc. v. SanDisk Corp.*, a district court granted a motion to dismiss, distinguishing cases where plaintiffs had pled the effect of the relevant exclusive agreements. No. 11-CV-04689-WHO, 2014 WL 1677521, at *6 (N.D. Cal. Apr. 25, 2014).  The court weighed the relatively short duration of the contracts against their exclusivity while conducting its rule of reason analysis.  *Id.* (quoting *Omega Envtl. v. Gilbarco, Inc.*, 127 F.3d 1157, 1163 (9th Cir. 1997)) ("PNY has failed to plead 'the potential to limit market access.'").  Similar to district court cases in the Third Circuit, *PNY Techs.* rejected the notion that mere reference to exclusive agreements suffices to avoid dismissal.  *Id.* at *5 ("[N]owhere did the judge say that foreclosure was inappropriate to address on a motion to dismiss.").

The Third Circuit applies the same standard.  In *ZF Meritor*, the jury was instructed that "plaintiffs must prove, by a preponderance of the evidence, that defendant had de facto exclusive dealing contracts that foreclosed competition in a substantial share of a relevant market.  That is

to say, that defendant had de facto exclusive dealing contracts sufficient in scope and duration to injure competition generally by foreclosing competitors from the opportunity to compete for a substantial share of the relevant market." Final Jury Instructions at 35, C.A. No. 06-623-SLR, D.I. 214 (Ex. A). Facts to show the same must be alleged in the Amended Complaint to avoid dismissal. *See Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S.Ct. 1009, 1014 (2020) ("[T]o determine what the plaintiff must plausibly allege at the outset of a lawsuit, we usually ask what the plaintiff must prove in the trial at its end.").

Complaints sufficiently alleging substantial foreclosure contrast with the sparse allegations here. In *GN Netcom, Inc. v. Plantronics, Inc.*, for example, this Court assessed detailed and market-specific circumstances in denying a motion to dismiss. *See* 967 F. Supp. 2d 1082, 1085-87 (D. Del. 2013). GN Netcom alleged that "Plantronics has induced 80% of [a critical sales channel] to enter into [exclusive] agreements." Compl. ¶ 36, *GN Netcom Inc. v. Plantronics Inc.*, C.A. No. 12-1318-LPS (D. Del. Oct. 12, 2012) (Ex. B). GN Netcom further alleged a lack of alternative distribution methods. *Id.* at ¶ 42. The complaint's allegations provided the Court with sufficient factual heft to evaluate the "nature of the market in which the parties compete." *See GN Netcom, Inc.*, 967 F. Supp. 2d at 1086.

Here, the R&R found "enough detail to make it plausible that the effect of the alleged exclusive dealing arrangements was to substantially foreclose competitors from the relevant markets." (D.I. 77 at 13.) The R&R did not identify, however, which of the allegations amount to "enough detail" and instead noted, "[w]hether the foreclosure was *in fact* 'substantial' is a conclusion that does not need to be reached." (*Id.*) This is contrary to the Supreme Court decision in *Tampa Electric* and cases analyzing whether foreclosure alleged in a complaint is 'substantial.' *See, e.g.*, *Int'l Constr. Prod.*, 2016 WL 264909, at *6-7.

The R&R also improperly reduced Align's attack on the Amended Complaint to its lack of market circumstances alleged, which prevents the calculation of "the percentage of the market foreclosed to competitors." (D.I. 77 at 12.) For example, 3Shape fails to allege the size of the market, 3Shape's own market share, and changes in its market share attributable to the conduct

6

alleged.  (*See* D.I. 63).  Such deficiency is glaring coming from an industry participant.
Adjectives and adverbs do not stand in for facts.  Conclusory allegations are properly
disregarded.  *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v.
Warminster Tp.*, 629 F.3d 121, 130 (3d Cir. 2010)).  But Align's criticism of the Amended
Complaint was not limited to a missing market share.  Align identified 3Shape's failure to allege
facts to show substantial foreclosure through qualitative analysis: whether or how many other
DSOs exist,[2] the duration of these (or other) contracts, or terms by which the contracts may be
terminated.  (*See* D.I. 67 at 9.)[3]  Further, 3Shape itself alleges that it competed for at least one of
the two DSO contracts.  (*See* D.I. 63 ¶ 54; D.I. 67 at 6, 9; D.I. 72 at 2-3.)  Head-to-head
competition between Align and 3Shape is the very behavior the antitrust laws encourage, as the
Court and the Third Circuit have recognized.  *See CAE Inc.*, 203 F. Supp. 3d at 455 (quoting
*Race Tires America, Inc.*, 614 F.3d at 83).

Absent facts alleged about the relevant market conditions, 3Shape has failed to provide
context for the conclusion that two Align contracts plausibly foreclose competition in two
separate relevant markets—the necessary inquiry into the "practical effects."  *See, e.g.*, *Int'l
Constr. Prod.*, 2016 WL 264909, at \*6-7.  Such inquiry is needed to evaluate the degree of
foreclosure, which distinguishes procompetitive exclusive agreements, like those Align and

---

[2] This is pertinent to the degree-of-foreclosure inquiry.  *See ZF Meritor*, 696 F.3d at 265-66.
Substantial foreclosure is not found where alternative channels are available for distribution, *see,
e.g.*, *Larry Pitt & Assocs.*, 57 F. Supp. 3d at 454, or where the number of exclusive contracts
pales compared to the buyers not subject to exclusivity, *see Barr Labs.*, 978 F.2d at 111; *Eisai*,
821 F.3d at 405.

[3] The R&R also made inferences unsupported by the law and the allegations in the Amended
Complaint.  The R&R treated discount programs offered by Align as contracts, incorporating
them into analysis of exclusive dealing under *ZF Meritor*.  (*See* D.I. 77 at 4-5.)  The *de facto* part
of the *ZF Meritor* case was that contracts functioned as exclusive, *ZF Meritor*, 696 F.3d at 284
n.16, not finding a contract where none was shown.  Not even 3Shape went so far as to call this a
contract, terming the Fusion Program "a *de facto* exclusive promotion," (D.I. 63 ¶ 12,) "a
bundled pricing mechanism," (D.I. 63 ¶ 56,) and a "product bundle," (D.I. 63 ¶ 62,) but not
alleging contracts other than two Align contracts with DSOs.  (*See* D.I. 63.)  Nor did 3Shape
allege counterparties—participants in the discount programs—even if they are treated as
contracts.  (*See id.*)

3Shape competed for, from agreements that could instead "foreclose competition in such a substantial share of the relevant market so as to adversely affect competition." *ZF Meritor*, 696 F.3d at 271; *see also Comcast Corp.*, 140 S.Ct. at 1014.[4]

The R&R's contention that substantiality of the foreclosure need not be determined at this stage, (*see* D.I. 77 at 13,) would permit allegations of any contract of any size to survive a motion to dismiss, because all contracts exclude competitors from the sales covered by the contract.  This is contrary to antitrust law, *see* above at pages two to six, and the Supreme Court decision in *Bell Atlantic v. Twombly*. 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)) ("'[E]ntitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . .").

3Shape's glaring omission of factual allegations to plausibly allege substantial foreclosure purportedly due to two Align contracts requires dismissal.

## II.     THE REPORT AND RECOMMENDATION APPLIED THE WRONG LEGAL STANDARD FOR BUNDLED DISCOUNTING UNDER *LEPAGE'S*

As the prior R&R made clear, "[t]he Third Circuit has instructed courts to interpret *LePage's* narrowly in light of more recent Supreme Court precedent." (D.I. 59 at 18 (citing *ZF Meritor*, 696 F.3d at 274 n.11).)  Permitting 3Shape to advance a bundled discounting claim where it fails to allege that it (1) could not also offer a lower price, and (2) was foreclosed from any portion of the market, would result in an expansion of *LePage's*, which this Circuit has discouraged.

As discussed in prior briefing, 3Shape admits that it *could* discount prices on its own scanner to match Align's alleged bundled discounts.  (*See* D.I. 67 at 10-11; D.I. 63 at ¶ 64.)  This

---

[4] 3Shape has also not alleged whether it or other industry players use exclusive contracts, relevant to the inquiry in *ZF Meritor*, *see* 696 F.3d at 272, but did allege that 3Shape would have entered into an exclusive DSO contract had it won one of the two contracts identified.  (*See* D.I. 63 ¶ 54.)

confirms dismissal is warranted.  3Shape cannot plausibly allege an exclusionary bundled discount arrangement without alleging that it could not *profitably* make a comparable offer. While a court may not have articulated a test yet on what it means to be unable to make a "comparable offer" in bundled discounting claims, the Third Circuit in *LePage's* made clear that to qualify as an "exclusionary practice" a firm must "'trade[] a part of its monopoly profits, at least temporarily, for a larger market share, *by making it unprofitable for other sellers to compete with it*.'"  *LePage's Inc. v. 3M*, 324 F.3d 141, 164 (3d Cir. 2003) (quoting Richard A. Posner, Antitrust Law: An Economic Perspective 28 (1976)) (emphasis added).  3Shape's conclusory assertions that it "could not compete effectively", or that it has lost sales "precipitously" are insufficient to plausibly establish that it could not offer a comparable price because Align's alleged bundled discounts made it unprofitable for 3Shape to compete.

Contrary to the R&R, it cannot be enough to simply complain that a competitor's prices are too low for "effective" competition, even if the plaintiff need not allege below-cost pricing. (*See* D.I. 77 at 15-16.)  The antitrust laws are intended to ensure price competition, not protect a plaintiff who simply does not wish to compete.  *See Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*, 555 U.S. 438, 451 (2009) (rejecting a "price-squeeze claim" in part because an assertion based on prices being "too low" has "no support in our existing antitrust doctrine"). Accordingly, the Supreme Court "[has] carefully limited the circumstances under which plaintiffs can state a Sherman Act claim by alleging that [the defendant's] prices are too low." *Id.*  Permitting antitrust liability where a firm can still compete on price, and do so profitably, would result in the exact harm the Supreme Court sought to avoid in *linkLine* and *Brooke Group* – that firms might "refrain from aggressive price competition to avoid potential antitrust

9

liability."  *Id.* at 452 (citing *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 223 (1993)).

3Shape's bundled discounting theory of exclusionary conduct must also fail because 3Shape cannot establish market foreclosure without any supporting allegations; here, 3Shape has not even alleged that the alleged bundled discount program had any customers.  (*See* D.I. 67 at 12); *see also* above at page seven.  Without an allegation that it could not profitably compete on price or that 3Shape was foreclosed substantially from large portions of the market, 3Shape's theory of bundled discounting cannot avoid dismissal.

## CONCLUSION

For the foregoing reasons, Align respectfully requests that the Court reject the Magistrate Judge's Report and Recommendation and dismiss 3Shape's claims.

*/s/ Nathan R. Hoeschen*
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendant*

OF COUNSEL:
Thomas A. Counts
Thomas Brown
Abigail Wald
Grant Margeson
PAUL HASTINGS LLP
101 California Street
Forty-Eighth Floor
San Francisco, CA 94111
(415) 856-7000

Noah Pinegar
PAUL HASTINGS LLP
875 15th Street, N.W.
Washington, DC 20005
(202) 551-1700

Dated: June 3, 2020