## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| 3SHAPE TRIOS A/S, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | :    C.A. No. 18-1332-LPS |
| | : |
| ALIGN TECHNOLOGY, INC., | : |
| | : |
| Defendant. | : |

### MEMORANDUM ORDER

WHEREAS, Magistrate Judge Hall issued a 21-page Report and Recommendation (the "Report") (D.I. 77), dated May 20, 2020, recommending that the Court deny Defendant Align Technology, Inc.'s ("Defendant" or "Align") motion to dismiss (D.I. 66) Plaintiff 3Shape Trios A/S' ("Plaintiff" or "3Shape") Amended Complaint (D.I. 63) for failure to state a claim upon which relief may be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6);

WHEREAS, on June 3, 2020, Align objected to the Report ("Objections") (D.I. 78), specifically objecting to (1) the Report's determination that 3Shape plausibly alleged substantial foreclosure and (2) the Report's application of the legal standard for bundled discounting under *LePage's, Inc. v. 3M*, 324 F.3d 141 (3d Cir. 2003);

WHEREAS, on June 17, 2020, 3Shape responded to Align's Objections ("Response") (D.I. 79), arguing that (1) the Report properly found that 3Shape adequately alleged substantial foreclosure; and (2) the Report correctly applied the legal standard for bundled discounting;

WHEREAS, on August 25, 2020, Align filed a letter (D.I. 81), calling to the Court's attention to subsequent legal authority, *FTC v. Qualcomm, Inc.*, 969 F.3d 974 (9th Cir. 2020), and its potential application to the disputed issues in the pending motion to dismiss;

1

WHEREAS, on August 31, 2020, 3Shape filed a letter (D.I. 82), contending that *Qualcomm* is inapposite;

WHEREAS, the Court has reviewed the motion and the Report *de novo*, and considered the parties' objections, responses, and letters, as well as the authorities cited by the parties, *see St. Clair Intellectual Prop. Consultants, Inc. v. Matsushita Elec. Indus. Co., Ltd.*, 691 F. Supp. 2d 538, 541-42 (D. Del. 2010); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3);

NOW, THEREFORE, IT IS HEREBY ORDERED that Align's Objections (D.I. 78) are OVERRULED, Judge Hall's Report (D.I. 77) is ADOPTED, and Align's motion to dismiss (D.I. 66) is DENIED.

1. Align first faults the Report for purportedly deferring analysis of substantial foreclosure, a necessary element for pleading *de facto* exclusive dealing. (Objections at 1) Under Third Circuit law, whether an exclusive dealing arrangement is legal "depends on whether it will foreclose competition in such a substantial share of the relevant market so as to adversely affect competition." *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 271 (3d Cir. 2012). Align focuses on the Report's statement that "[w]hether the foreclosure was in fact 'substantial' is a conclusion that does not need to be reached," insisting this was legal error. (Objections at 1-2; *see also* Report at 13)

2. Align's criticism is based on a mischaracterization of the Report, taking a portion of a single sentence out of context. In fact, the Report thoroughly examines the factual allegations in the Amended Complaint and explains how they "plausibly allege unlawful exclusive dealing in both markets." (Report at 11-12) In the sentence immediately preceding the one emphasized by Align, the Report explicitly concludes that "[v]iewing the amended complaint in its entirety and in the light most favorable to 3Shape, there is enough detail to make

2

it plausible that the effect of the alleged exclusive dealing arrangements was to substantially foreclose competitors from the relevant markets." (*Id.* at 13) In stating that "[w]hether the foreclosure was in fact 'substantial' is a conclusion that does not need to be reached, and would be inappropriate to reach, at this stage of litigation," the Report was correctly stating that substantial foreclosure does not need to be ***proven*** at the pleading stage. (*See* Response at 2) ("Judge Hall was stating nothing more than the unexceptionable – and obviously correct – premise that to determine as a matter of *fact* whether foreclosure was substantial requires discovery, and will be the subject of inquiry at the next stage of this litigation.")

3. The Court agrees with the Report that 3Shape has adequately alleged substantial foreclosure.[1] (*See* Report at 11-12) The Amended Complaint alleges: (1) Align had significant shares in both the aligner market and the scanner market (D.I. 63 ¶¶ 2, 27, 142, 155, 182); (2) Align's exclusive agreements with two of the nation's largest dental service organizations ("DSOs") and the Fusion discount program required DSO members to purchase scanners from Align and locked DSO members into using Align's scanners and ordering Align's aligners (*id.* ¶¶ 47-64); (3) the *de facto* exclusive dealing arrangements enabled Align to rapidly increase its share in the scanner market and to maintain its monopoly in the aligner market (*id.* ¶¶ 50, 55); and (4) 3Shape's sales and share in the scanner market fell precipitously (*id.* ¶ 136). These factual allegations plausibly plead substantial foreclosure.

---

[1] Align asserts that the Report inappropriately treated the Fusion discount program as if it were a contractual arrangement. (Objections at 7 n.3) If the members of a discount program "have a strong economic incentive" to continue participating in the discount program, the discount program "is not edentulous." *United States v. Dentsply Int'l, Inc.*, 399 F.3d 181, 194 (3d Cir. 2005). Since the Amended Complaint adequately alleges the economic incentives for participating in the Fusion discount program (*see* D.I. 63 ¶¶ 56-64), it is not inappropriate to treat the discount program as involving *de facto* exclusive dealing contracts.

4. Align argues that the allegations in the Amended Complaint lack certain factual details required for quantitative and qualitative analyses of the degree of market foreclosure. (Objections at 6-7) However, the cases cited by Align, most of which address evidentiary records and not just pleadings, do not support the proposition that such factual details are required at the motion to dismiss stage. *See, e.g., Jefferson Par. Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 5 (1984) (trial); *Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 324 (1961) (summary judgment); *Eisai, Inc. v. Sanofi Aventis U.S., LLC*, 821 F.3d 394, 399 (3d Cir. 2016) (summary judgment); *ZF Meritor*, 696 F.3d at 263 (trial); *Barr Lab'ys, Inc. v. Abbott Lab'ys*, 978 F.2d 98, 101 (3d Cir. 1992) (summary judgment); *Qualcomm*, 969 F.3d at 986 (bench trial); *Sterling Merch., Inc. v. Nestle, S.A.*, 656 F.3d 112, 115 (1st Cir. 2011) (summary judgment); *Stop & Shop Supermarket Co. v Blue Cross & Blue Shield of R.I.*, 373 F.3d 57, 60 (1st Cir. 2004) (jury trial); *Roxul USA, Inc. v. Armstrong World Indus., Inc.*, 2019 WL 1109868, at *1 (D. Del. Mar. 8, 2019) (summary judgment).

5. Align cites two district court decisions from within the Third Circuit in which courts have granted motions to dismiss for failure to plausibly allege substantial foreclosure. *See Int'l Constr. Prod. LLC v. Caterpillar Inc.*, 2016 WL 264909 (D. Del. Jan. 21, 2016); *Larry Pitt & Assocs. v. Lundy Law, LLP*, 57 F. Supp. 3d 445 (E.D. Pa. 2014). Both cases, however, are distinguishable. In *Caterpillar*, 2016 WL 264909, at *5-6, unlike this case, "the factual allegations pertaining to exclusive dealing [were] sparse;" the complaint there "allege[d] no facts about the nature of the exclusive dealing arrangements and their potentially anticompetitive effects." (Report at 13 n.4) In *Larry Pitt*, 57 F. Supp. 3d at 453, the agreements at issue restricted access to advertising channels, not sales channels, and even those restrictions applied only when a rival voluntarily agreed to be bound by such restrictions. The exclusive contracts

4

Align entered into with the DSOs are markedly different from the agreements at issue in *Larry Pitt*. (*See* Report at 11-13) (describing agreements between Align and DSOs) Hence, Align's cited cases do not support the conclusion that 3Shape's Amended Complaint fails to plausibly allege substantial foreclosure.[2]

6. Align next argues that the Report applied the wrong legal standard for bundled discounting under *LePage's*. (Objections at 8) Specifically, Align asserts that "3Shape cannot plausibly allege an exclusionary bundled discount arrangement without alleging that it could not ***profitably*** make a comparable offer."[3] (*Id.* at 9) (emphasis in original) Contrary to Align's argument, *LePage's* did not mandate a showing that the aggregate discount resulted in a below-cost price when allocated to a single product; nor did it require a showing that the plaintiff could not match the aggregate discount.[4] *See LePage's*, 324 F.3d at 175 (Greenberg, J., dissenting)

---

[2] Align also cites three district court decisions from the Ninth Circuit, in which courts granted motions to dismiss, to argue that 3Shape failed to adequately plead the "practical effect of the exclusive contracts." (Objections at 4) These cases are inapposite. In both *PNY Techs., Inc. v. SanDisk Corp.*, 2014 WL 1677521, at *5 (N.D. Cal. Apr. 25, 2014), and *Pro Search Plus, LLC v. VFM Leonardo, Inc.*, 2013 WL 3936394, at *4 (C.D. Cal. July 30, 2013), the district courts dismissed Section 1 claims by relying on the short duration and ease of termination of the exclusive agreements at issue. By contrast, the Third Circuit has declined to take the position that the short duration and ease of termination of exclusive dealing contracts mean such agreements cannot violate the antitrust laws. *See Dentsply*, 399 F.3d at 194 & n.2. In the third of the cited cases, *Rheumatology Diagnostics Lab'y, Inc. v. Aetna, Inc.*, the complaint was "completely devoid of any context in which to evaluate [plaintiff's] claims." 2013 WL 5694452, at *12 (N.D. Cal. Oct. 18, 2013). That is not the case here.

[3] 3Shape contends that Align's assertion constitutes "new argument." (Response at 7-8) In the Court's view, Align at least implicitly made this argument in its motion to dismiss briefs. Specifically, Align argued that 3Shape must allege that it could not match the price of the iTero scanner if the aggregate Fusion program discount were allocated to the scanner. (*See* D.I. 67 at 11; *see also* D.I. 72 at 5)

[4] Align argues that "the Third Circuit in *LePage's* made clear that to qualify as an 'exclusionary practice' a firm must 'trade[] a part of its monopoly profits, at least temporarily, for a larger market share, by making it unprofitable for other sellers to compete with it.'" (Objections at 9) (quoting *LePage's*, 324 F.3d at 164) The cited portion of the *LePage's* opinion, however,

5

("LePage's did not even attempt to show that it could not compete by calculating the discount that it would have had to provide in order to match the discounts offered by 3M through its bundled rebates . . . .").

7.  In *LePage's*, 324 F.3d at 155, the Third Circuit explained that a bundled rebate scheme is better analogized to unlawful tying than to predatory pricing. Thus, an antitrust plaintiff must show that the effect of the discounts is to "foreclose portions of the market to a potential competitor who does not manufacture an equally diverse group of products and who therefore cannot make a comparable offer." *Id.* In considering what constitutes a comparable offer under *LePage's*, courts do not necessarily apply the price-cost test where "the bundling – not the price – served as the primary exclusionary tool." *Eisai*, 821 F.3d at 409; *see also ZF Meritor*, 696 F.3d at 277 (declining to apply price-cost test to exclusive dealing claim where "Plaintiffs did not rely solely on the exclusionary effect of [Defendant's] prices").

8.  The Court agrees with the Report that the Amended Complaint has stated a plausible bundled discounting claim. 3Shape alleges in the Amended Complaint that it only sells scanners, not aligners, and that matching Align's Fusion program price on scanners would require 3Shape to forego a third of its revenue, whereas Align could make up for the discount from the sale of the additional aligner cases. (D.I. 63 ¶¶ 64, 137) Hence, consistent with *LePage's* and *ZF Meritor*, the Amended Complaint alleges sufficient facts to support a plausible bundled discounting claim where 3Shape, a single-product producer, "could not compete effectively" when Align offered a discount for purchasing products in multiple lines. (*Id.* ¶ 64)

---

discusses whether 3M had presented evidence of a legitimate business justification, not whether LePage's had presented evidence of an antitrust violation by providing bundled discounts.

9.   Also, contrary to Align's assertion that "3Shape's bundled discounting theory of exclusionary conduct must also fail because 3Shape cannot establish market foreclosure" (Objections at 10), the Amended Complaint alleges facts making plausible that "portions of the [scanner] market" have been "foreclosed" to potential competitors. *LePage's*, 324 F.3d at 155. For example, 3Shape alleges that its scanner sales have "fallen precipitously" as dental professionals have ceased purchasing 3Shape's scanners because they have been forced to turn to Align's scanners, and that Align's scanner sales and market share have significantly increased. (D.I. 63 ¶¶ 55, 136)

November 25, 2020  
Wilmington, Delaware

HONORABLE LEONARD P. STARK  
UNITED STATES DISTRICT JUDGE