March 25, 2021

**VIA CM/ECF**

Magistrate Judge Jennifer L. Hall
J. Caleb Boggs Federal Building
844 N. King Street
Unit 17, Room 3124
Wilmington, DE 19801-3555

  Re: **3Shape Trios A/S v. Align Technology, Inc.,**
     **Case No. 1:18-cv-01332-LPS-JLH**

Dear Judge Hall:

  Pursuant to Your Honor's March 18, 2021 Order (D.I. 105), the parties in the above-referenced matter submit this joint letter addressing the issues to be heard at the March 31, 2021 discovery dispute teleconference. The issues in dispute pertain to an Amended Protective Order the parties intend to submit to the Court. Plaintiff 3Shape Trios A/S's ("Plaintiff" or "3Shape") proposed Amended Protective Order is attached hereto as Exhibit 1, and Defendant Align Technology, Inc.'s proposed Amended Protective Order is attached hereto as Exhibit 2. The specific provisions in dispute are (1) Paragraph 11 – definition of Outside Counsel Only Material; (2) Paragraph 33- the scope of privileged material which must be reflected in privilege logs; and (3) Paragraphs 55-59- the terms of a cross-use agreement related to discovery in other actions.

**3 Shape's Position**

  **A. "Outside Counsel Only" Definition**

  In the original Protective Order in this antitrust action (D.I. 46), the parties attempted to negotiate and then litigated the definition of "Highly Confidential" discovery material, resulting in access to these materials being limited to certain in-house counsel, who shall be prohibited from engaging in "competitive decision-making" during the pendency of this action and two years thereafter. During negotiation of this proposed Amended Protective Order, the parties agreed that a certain, limited set of highly sensitive discovery material relating to the claims in this action warrants further protection through a designation of "Outside Counsel Only." However, the parties disagree as to the definition of that designation.[1]

---

[1] Any suggestion by Align that the alleged technical violation of the patent prosecution bar by counsel for 3Shape in C.A. No. 18-866 should somehow create concern regarding 3Shape's use of discovery materials in this action is wildly misplaced. As Your Honor is aware, those allegations involve a 3Shape attorney entering his appearance in the 18-886 action and thereafter engaging in patent prosecution work for 3Shape. That attorney did not access or review any

In an effort to balance the need to share information with in-house counsel with the significant competitive concerns with doing so as to certain discovery material, 3Shape proposes to define "Outside Counsel Only" discovery material as that which "contains ***detailed margin, cost, or pricing information***, which a party or non-party reasonably believes to be so highly sensitive that … its disclosure to the receiving party's in-house counsel would cause material injury to the business, commercial, competitive, or financial interests of such producing party …" This objective definition allows for the protection of specific competitive information from even the parties' specially designated in-house counsel while not endorsing or encouraging overuse of the "Outside Counsel Only" designation. That balance is critical; the overuse of the Outside Counsel Only designation would prevent 3Shape's counsel from sharing discovery material with their client to obtain necessary guidance and develop case strategy.

Align acknowledged 3Shape's concern regarding over-designation in negotiations over this language, and previously promised to provide an alternative, more narrow definition of Outside Counsel Only material. However, it now proposes a broad, subjective definition that turns on a subjective belief that would allow it (or 3Shape) to designate as Outside Counsel Only any material a party believes "would create a substantial risk of serious harm that could not be avoided by less restrictive means." Align's unlimited, subjectively based approach risks massive over-designation and will invite significant designation disputes requiring additional Court involvement.

While the parties agreed to a definition of "Outside Counsel Only" discovery material in certain patent actions between them that allowed for various technical materials to be designated in that matter, 3Shape's proposed definition of Outside Counsel Only material in this action that protects objectively competitive information while limiting either parties' ability to unfairly prohibit the opposing party's access to discovery materials. Pricing, cost and margin information is extremely sensitive. 3Shape's proposal accounts for this reality while protecting against abuse of this restrictive category.

### B. Scope of Privilege Logs

The parties addressed for the first time in recent negotiations that limitations should be placed on the scope of material which must be reflected in privilege logs, but disagree on the limitations. Align focuses on a time cut-off which it sets at the filing of the initial complaint: "[w]ith respect to information, documents, and things generated after the filing of the initial complaint, the Parties are not required to include any such information in privilege logs." 3Shape instead proposes a subject-matter limitation on privilege logs such that "[p]rivileged communications "to" or "from" outside counsel need not be logged so long as the communication is (1) made for the purpose of requesting or providing legal advice in connection with this Action; or (2) relating to attorney work product prepared for this Action."

Align's proposal is problematic for multiple reasons. First, Align seeks to shield—without

---

confidential discovery materials. Simply put for purposes of this dispute, there are no allegations whatsoever that 3Shape misused discovery materials.

any basis—documents created during the 14 months prior to the filing of the operative complaint.[2] The operative Amended Complaint contains allegations relating to events occurring between the filing of the initial and operative (amended) complaints.  Second, and related, 3Shape alleges that Align's anticompetitive behavior and tactics are ongoing. While the parties continue to negotiate relevant time periods for various discovery requests, a premature, bright-line time cut-off for materials that must be reflected in a privilege log unfairly restricts the parties' ability to review and evaluate the privilege claims associated with communications that otherwise are relevant to the allegations in this action.  This Court and Circuit have not adopted a bright-line rule limiting the privilege log requirement to materials created prior to a complaint being filed, and such a rule would be particularly inappropriate here. *See Tyco Healthcare Group LP v. Mutual Pharm. Co, Inc.*, No. 07-1299, 2012 U.S. Dist. LEXIS 63393 at *11, (D.N.J. May 4, 2012).

3Shape's privilege log proposal appropriately reduces cost and burden of logging certain privileged or work product materials directly in connection with this Action, while permitting the parties transparency as to communications potentially at issue in this Action.

**C. Cross-Use Agreement**

As Your Honor is aware, this is not the only dispute between the parties. In fact, there are presently 14 pending actions between these two parties In all of these actions where discovery is or has been active, the parties have agreed to at least some cross-use agreement. *See, e.g.*, Ex. 3. Additionally, Your Honor and Chief Judge Stark have both encouraged cooperation between the parties in the discovery process across these actions and utilization of cross-use agreements. *See, e.g.* Ex. 4; Ex. 5 This is consistent with similar rulings from this and other courts that cross-use agreements promotes efficiency. *See, e.g.*, *SZ DJI Tech. Co. v. Autel Robotics USA LLC*, C.A. No. 16-706-LPS, 2019 U.S. Dist. LEXIS 44056, 2019 WL 1244948, at *2 (D. Del. Mar. 18, 2019); *see also Hynix Semiconductor Inc. v. Rambus Inc*., 250 F.R.D. 452, 455, 3 (N.D. Cal. 2008) ("The court adopted this "cross-use provision" to minimize the expense and unnecessary repetition.")

In the face of this guidance from the Court, Align has refused to agree to the cross-use of discovery material from pending and future actions between the parties.  Align has taken the position that the parties should instead use expensive, time consuming "standard discovery tools" by serving discovery requests seeking production of discovery material from the other pending actions that are related to the allegations in this action. That process, which requires a party to expend substantial resources to re-review prior productions to determine what is responsive here, is not only inefficient but encourages further discovery disputes over whether a producing party has appropriately deemed material responsive.  By contrast, 3Shape's proposal allows each party to utilize previously reviewed and produced discovery materials in an efficient and multiple case-cooperative manner.[3]  3Shape further addressed in its proposal a concern raised by Align regarding duplication of deposition testimony, while at the same time acknowledging the reality that some overlap of deposition testimony may occur in the normal course. Further, while not addressed in the parties' meet and confers, 3Shape will honor any designation made in another action regarding

---

[2] For this reason alone, the Court's Default Standard for Discovery is impractical.

[3] The fact that the parties have retained multiple law firms in their various actions is of no moment. 3Shape's counsel have already begun discussions regarding the logistics necessary to carry out cross-use.

who may review such materials, so any concern regarding a "back door" or end-around other court orders is unfounded.

3Shape agrees to Align's proposal of a cross-use agreement with respect to the class action proceeding against Align that was transferred from this Court to the United States District Court for the Northern District of California styled, *Simon and Simon, PC d/b/a City Smiles et al. v. Align Technology, Inc*., C.A. No. 3:20-cv-03754-VC (N.D. Cal.) (the "N.D. Cal. Action"), so long as the existence of that cross-use agreement does not delay production of documents or written discovery responses, or limit 3Shape's ability to obtain non-repetitive deposition testimony in this action.[4]

For these reasons, 3Shape respectfully requests that this Court enter the proposed Amended Protective Order in the form it has submitted with this letter at Exhibit 1.

**Align's Position**

**Outside-Counsel-Only Information**. Align proposes to mirror the definition of Outside-Counsel-Only ("OCO") information that Align and 3Shape agreed to in other cases before the Court. *See, e.g.*, Ex. A, ¶ 1.7, C.A. No. 17-01646-LPS (Aug. 22, 2018). The parties compete against one another with vigor. Deals are happening in real time that are the subject of discovery.[5] Align is concerned that documents produced in litigation might be used for non-litigation purposes. Indeed, counsel for 3Shape explicitly violated the patent prosecution bar provisions in several cases, currently at issue in C.A. No. 18-0886.

Align seeks a reasonable, previously agreed-upon standard from the other cases while 3Shape's proposal narrowly restricts OCO information to margin, cost, or pricing information. Align's proposal is that OCO information is defined as material from the Highly Confidential category that not even in-house counsel for the parties can see.[6] 3Shape's proposal excludes broad swaths of documents, the disclosure of which is properly restricted. *See, e.g.*, *PhishMe v. Wombat Security Techs*, C.A. No. 16-403-LPS-CJB, 2017 WL 4138961 at *1 (Sept. 8, 2017) (attorneys-eyes-only material in litigation between "vigorous competitors" included strategic planning, competitive intelligence, and customer contract negotiations). 3Shape's proposal would allow in-house counsel to see real time documents about innovations and product release timing, marketing strategy, detailed customer information, and more. *See* Ex. 1 ¶ 11. Align simply seeks what this Court has entered (and the parties have agreed to in other disputes). 3Shape's concerns about over-

---

[4] 3Shape notes that a Motion to Dismiss remains pending in the N.D. Cal. Action and a Rule 16 discovery conference has been continued on multiple occasions. *See* PX Ex. 6 Further, a Protective Order has recently been entered in the N.D. Cal. Action without any reference to cross-use of discovery with this Action. Ex. 7.

[5] After 3Shape accused Align of attempting to monopolize intraoral scanners with exclusive contracts including with Aspen Dental Management, (*see* D.I. 63 ¶¶ 53, 54, 136), 3Shape won a contract with Aspen Dental. https://www.3shape.com/en/press/2021/aspen-dental-management-partners-with-3shape

[6] Highly Confidential information is defined as that which the Producing Party reasonably believes to be so competitively sensitive that it is entitled to extraordinary protections. The parties agree on this definition. *Compare* Ex. 2 at 3 with Ex. 1 at 3.

4

designation are speculative; and if over-designation should occur, 3Shape has a remedy common in protective orders: challenging the designations. *See* Ex. 2 ¶¶ 29-31; Ex. A ¶ 6.1.

Align's proposed OCO definition also corresponds to the protective order stipulated to in the putative class action antitrust case proceeding in the Northern District of California, *Simon and Simon PC d/b/a City Smiles and VIP Dental Spas v. Align Technology, Inc.*, No. 20-3754 ("N.D. Cal. Action"). *See* Ex. C ¶ 2.7. As both Align and 3Shape have proposed cross use as between this case and the putative class case, consistent designations guard against creating a "back door" through which in-house counsel access material from which they should be restricted.

**Privilege-Logging Post-Complaint.** The Court's Default Standard for Discovery provides: "With respect to information generated after the filing of the complaint, parties are not required to include any such information in privilege logs." D.I. 94 ¶ 1, Ex. B. The parties have ***twice*** incorporated this Default Standard into prior scheduling orders, *see id.*; D.I. 26 at 1-2,[7] which Align seeks to maintain. Because 3Shape's proposal conflicts with the Scheduling Order, D.I. 94, it must show good cause for the change. FRCP 16(b)(4); *Glaxosmithkline LLC v. Glenmark Pharms. Inc., USA*, C.A. No. 14-0877-LPS-CJB, 2016 WL 7319670, at * 1 (D. Del. Dec. 15, 2016).

Eliminating post-complaint logging greatly reduces the burden on the parties, which have been litigating more than a dozen cases before, during, and after the time 3Shape filed this Action. The volume of litigation between the parties dramatically increases the amount of privileged material then subject to logging. *See Grider v. Keystone Health Plan Cent., Inc.*, 580 F.3d 119, 140 n.22 (3d Cir. 2009) ("We underscore that a privilege log may not be required for communications that take place after the filing of a law suit.").

3Shape's proposed language only relieves the parties of logging privileged documents for communications with outside counsel that are attorney-client communications or attorney work product *related to this case*. This is unduly limited and unnecessarily increases the expense of the parties preserving privilege. 3Shape has not identified any exceptional circumstances during the litigation that would justify departure from the Scheduling Order. If anything, given the volume of litigation among the parties since the Complaint filed, the default rule is more justified here.

**Proposed Cross-Use.** Align proposes limited cross use, incorporating into this case discovery from the N.D. Cal Action, which mostly mirrors the factual and legal allegations of this case, thus avoiding duplicative discovery.

3Shape seeks a broad cross use provision to allow open access to voluminous discovery from thirteen patent cases without any showing of relevance to the claims and defenses at issue here. That the party names are the same in the thirteen patent cases does not suffice. *See Novanta Corp. v. Iradian Laser, Inc.*, C.A. No. 15-1033-SLR-SRF, 2016 WL 4987110, at *5 (D. Del. Sept. 16, 2016) (denying motion to compel discovery relating to prior litigation between the parties that did not involve the accused products). 3Shape can use the discovery tools provided under the FRCP to seek *relevant* documents and testimony from those cases. The patent cases contain many

---

[7] Magistrate Judge Burke entered a scheduling order on March 19, 2019. *See* D.I. 26. Judge Stark thereafter entered an updated scheduling order on January 5, 2021. *See* D.I. 94.

highly sensitive documents such as source code that have absolutely no relevance to the antitrust cases. Thus, the materials are not properly discovered. *Eisai, Inc. v. Sanofi Aventis U.S., LLC*, 821 F.3d 394, 409-10 (3d Cir. 2016) (affirming denial of discovery of depositions from prior antitrust litigation due to irrelevance and burden).[8] Given that different counsel are litigating these cases and given the prior violations of protective orders in patent cases among the parties, Align's concerns about protecting its trade secrets and confidential information are well-founded. 3Shape's proposal would open up in unlimited fashion the discovery files of thirteen lawsuits to eight different law firms litigating the antitrust cases. *See* Ex. 1 at 36-37; Ex. C at 14-15.

During the meet and confer process, Align said it would consider some limited cross use if that cross use would lead to genuine efficiencies such as the elimination of depositions. *See* Ex. D at 1. Despite this clear condition, the "best efforts" language in 3Shape's proposal, *see* Ex. 1 ¶ 56, allows for duplication of depositions from the patent cases unless unreasonable, and provides no recourse for unreasonable duplication. The proposal also places restrictions on Align in the N.D. Cal. Action. *See* Ex. 1 at 34 ("Nothing in this paragraph shall be used… by any Party to delay (1) responding to written discovery requests in this this [sic] Action or the N.D. Cal. Action"). But the proposal does not even provide the ineffectual best efforts provision to avoid duplication between the two antitrust cases. *See* Ex. 1 at 34 ("parties will use best efforts to coordinate discovery to avoid duplication of deposition testimony previously taken in the Patent Actions recognizing some overlap…may occur in the normal course."). 3Shape's cross use provision thus leaves open unlimited duplication of deposition testimony between the N.D. Cal. Action and here.

3Shape's cross use proposal creates the additional problem of a back door around the operative protective orders in those cases. To illustrate, in the C.A. No. 17-1646 patent case before the Court, the protective order provides for an Outside Counsel Only provision like Align seeks here. *See* Ex. A ¶ 1.7. If 3Shape's limitation on OCO material is instead adopted in this case, and then documents come from the 17-1646 patent case into this one through cross use, 3Shape could seek to provide in-house attorneys with access to materials from which they were previously restricted.

Finally, 3Shape seeks to bind the parties to this same expansive cross use in "any future action" between the parties, a proposal seemingly unlimited in time, scope, or jurisdiction. This radical "in perpetuity" cross use exception to the FRCP is not warranted and should be rejected along with the rest of 3Shape's cross use proposal. Standard discovery tools exist for 3Shape to request what is relevant and germane from the prior cases. 3Shape points to no reason nor authority that would allow for, let alone support, a total abandonment of normal discovery processes.

---

[8] The cases 3Shape cites are not to the contrary. *SZ DJI Technology v. Autel Robotics* involved cross use among patent cases that were "of close relation." C.A. No. 17-706-LPS, 2019 WL 1244948, at *1 (D. Del. Mar. 18, 2019). *Hynix Semiconductor v. Rambus* supports Align's position: cross use in that case served to "to minimize the expense and unnecessary repetition of depositions." 250 F.R.D. 452, 454 (N.D. Cal 2008), as Align sought here. *See* Ex. D at 1.

Respectfully submitted,

*/s/ Geoffrey G. Grivner*

Geoffrey G. Grivner (#4711)

*/s/ Nathan Hoschen*

Nathan Hoschen (#6232)

cc: All Counsel of Record (via CM/ECF)