# UNITED STATES DISTRICT COURT
for the
District of Delaware

| 3Shape Trios A/S | ) | |
|---|---|---|
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. C.A. No. 18-1332-LPS-JLH |
| Align Technology, Inc. | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: SmileDirectClub, 100 North Gary Avenue, Suite A, Roselle, IL 60172

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A

| Place: Buchanan Ingersoll & Rooney PC<br>500 Delaware Ave., Suite 720<br>Wilmington, DE 19801 | Date and Time:<br>10/11/2021 5:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 09/10/2021

*CLERK OF COURT*

OR

_____     /s/ Geoffrey G. Grivner
*Signature of Clerk or Deputy Clerk*           *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Plaintiff 3Shape Trios A/S , who issues or requests this subpoena, are:

Geoffrey G. Grivner, Buchanan Ingersoll & Rooney PC, 919 N. Market St., Suite 990 Wilmington, DE 19801, geoffrey.grivner@bipc.com, 302-552-4207

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Civil Action No. C.A. No. 18-1332-LPS-JLH

# PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❒ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❒ I returned the subpoena unexecuted because: _____
_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

 **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
   **(i)** is a party or a party's officer; or
   **(ii)** is commanded to attend a trial and would not incur substantial expense.

 **(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

 **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

 **(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
   **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
   **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
   **(i)** fails to allow a reasonable time to comply;
   **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
   **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
   **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
   **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
   **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
   **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
   **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

 **(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
   **(i)** expressly make the claim; and
   **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# SCHEDULE A

## DEFINITIONS

Unless otherwise specified, or unless the context of the Requests require otherwise, your responses and your production of documents shall be governed by the Federal Rules of Civil Procedure, the Local Rules of the District of Delaware, the applicable Protective Order in this lawsuit, and the Definitions and Instructions below:

1. "Document" or "Documents" as used herein is intended to be comprehensive and includes any and all materials in the broadest sense contemplated by Rule 34 of the Federal Rules of Civil Procedure. A draft or non-identical copy is a separate document within the meaning of this term.

2. "Align" shall mean the Defendant in this Matter as well as its officers, directors and employees.

3. "3Shape" shall mean the Plaintiff in this Matter as well as its officers, directors and employees.

4. "You," "Your," or "Yours" means the entity to whom this Subpoena *Duces Tecum* is directed, including all affiliates, subsidiaries, predecessors, successors, parents, divisions and operating units thereof, directors, officers, agents and entities under common control with them.

5. "Your Dentists" means any Person, as defined below, that is a member of You and/or is affiliated with You.

6. "Clear Aligners" means custom-manufactured removable dental aligners made of clear plastic that correct teeth misalignment, including but not limited to Invisalign®, Nighttime Clear Aligners®, and SmileDirectClub Clear Aligners.

7. "Silicone Mold" means manual dental impressions produced by inserting a metal or plastic tray containing impression material, such as silicone-based polyvinyl-siloxane or alginate, into a patient's mouth to generate a cast of the patient's teeth.

8. "Person" shall mean any natural person or business, legal or governmental entity or association.

9. "Relating to" means referring to, involving, concerning, describing, evidencing or constituting.

10. "Communication" or "Communications" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

11. The terms "and" and "or" as used herein shall be both conjunctive and disjunctive.

12. "Intraoral Scanners" means digital scanners used by dental professionals, to generate digital scans of a patient's teeth, excluding Scanners for Orthodontic Treatment.

13. "Scanners for Orthodontic Treatment" means digital intraoral scanners used by dental professionals to generate full mouth scans to order clear aligners.

14. "iTero" or "iTero Scanner" means any and all versions of Align's intraoral scanner and all versions of software necessary to operate the scanner.

15. "TRIOS" or "TRIOS Scanner" means any and all versions of 3Shape's intraoral scanner and all versions of software necessary to operate the scanner.

16. "Invisalign" means any and all versions of Align's Clear Aligner products.

*17.* "Matter" means either the civil action entitled *3Shape Trios A/S v. Align*

*Technology, Inc.,* C.A. No. 18-01332-LPS in the United States District Court for the District of Delaware, and/or *Simon & Simon, PC, et al. v. Align Technology, Inc.*, No. 3:20-cv- 03754-VC in the United States District Court for the Northern District of California.

**INSTRUCTIONS**

The following instructions apply to each document request contained herein:

1. **Privileged Documents.** If you assert that any document requested to be produced is privileged, please provide a privilege log and identify:

    a. the document request(s) that the purportedly privileged document is responsive to;

    b. the author(s) of the document;

    c. the address(es) of the author(s);

    d. the current custodian of the document;

    e. the date of the document;

    f. the subject matter and title of the document;

    g. the number of pages in the document;

    h. the distribution lists;

    i. the name of the file in which the document is or was located; and

    j. the specific grounds on which the privilege has been asserted and, if the privilege is governed by state law, the state's privilege rule being invoked.

2. **Furnish All Documents Known or Available.** In producing documents, furnish all documents known or available to you, regardless of whether such documents are possessed directly by you or your directors, officers, agents, representatives, investigators, or by your attorneys or their agents, representatives, or investigators.

3. **Partially Unavailable Documents.** If any requested document cannot be produced in full, produce to the fullest extent possible, specifying each reason for your inability to produce the remainder and stating whatever information, knowledge, or belief you do have concerning the unproduced portion and the expected dates on which full production can be completed.

4. **Documents No Longer in Existence.** If any documents requested were in existence but are no longer in existence, then so state, specifying for each document:

    a. the type of document;

    b. the type(s) of information contained thereon;

    c. the date upon which it ceased to exist;

    d. the circumstances under which it ceased to exist; and

    e. the identity of all persons having knowledge or who had knowledge of the contents thereof.

5. **Documents No Longer in Your Possession.** If any document was, but is no longer, in your possession or subject to your control, state whether it (a) is missing or lost; (b) has been destroyed; (c) has been transferred, voluntarily or involuntarily, to others; or (d) otherwise disposed of, and in each instance explain the circumstances of such disposition, state the approximate date thereof, and if transferred, identify the person or entity to which the document was transferred.

6. **Folders, Tabs, or Labels.** File folders with tabs or labels identifying documents called for by this Request must be produced intact with such documents.

7. **Documents Attached.** Documents attached to each other should not be separated.

8. **Relevant Time Period**. Unless otherwise specified, each specification calls for documents for the years from January 1, 2013 to the present.
9. **Continuing**. These Document Requests are continuing in nature. To the extent you locate or become aware of additional responsive documents at any time up to and including the time of trial, please produce them promptly.

## REQUESTS FOR PRODUCTION

Please produce all documents in your possession responsive to the following:

**REQUEST NO. 1:**

Documents sufficient to show the timing or anticipated timing of Your introduction of a Clear Aligner Product for sale in the United States.

**REQUEST NO. 2:**

Documents sufficient to show Your estimated share of the market that includes Clear Aligner Products that encompasses any part of the United States, including how Your estimated market share has changed on an annual basis.

**REQUEST NO. 3:**

Documents sufficient to show the source for models of a patient's dentition used for developing a treatment plan with Your Clear Aligner in the United States, including but not limited to the percentage of cases originating from the scan from an Intraoral Scanner Product (and which Intraoral Scanner Product was used to develop the model) and the percentage of cases originating from a physical mold, including silicone, polyvinylsiloxane, and alginate molds.

**REQUEST NO. 4:**

Documents Concerning or Relating to contracts, agreements, or arrangements with

5

providers of Intraoral Scanner Products related to Your Clear Aligner Product that provide for, in the United States, interoperability, joint marketing, joint discounting (such as discounts across two or more products), or any interface between an Intraoral Scanner Product and Your Clear Aligner.

**REQUEST NO. 5:**

Documents Concerning or Relating to studies, analyses, or reports describing or discussing the entry of any Person or Entity into marketing, manufacturing, offering, distributing, or selling a Clear Aligner Product in any part of the United States.

**REQUEST NO. 6:**

Documents sufficient to show Your inventory of Your Clear Aligners in the United States, on a monthly and annual basis, stated separately, from the date of Your introduction of Clear Aligner Products for sale in the United States to the present.

**REQUEST NO. 7:**

Documents sufficient to show Your forecasts for volumes of sales of Your Clear Aligners in the United States, on a monthly and annual basis, stated separately, from the date of Your introduction of Clear Aligner Products for sale in the United States to the present.

**REQUEST NO. 8:**

Documents sufficient to show Your analysis, evaluation, or assessment of products with which Your Clear Aligners compete in the United States, such as other Clear Aligner Products, traditional braces, and sublingual braces, and including but not limited to comparisons of product characteristics, product pricing, estimated market share, and product strengths or weaknesses.

**REQUEST NO. 9:**

Documents sufficient to show discounts, rebates, and/or promotions offered by You for

sales of Your Clear Aligners in the United States, including any volume discount programs offered to dentists, orthodontists, or dental service organizations; any joint or Bundled sales made together with a provider of an Intraoral Scanner Product; any Bundled sales made with other products or services offered by You; membership, loyalty, or rewards programs; and contracts, partnerships, arrangements, or agreements providing for exclusive or preferred sales of Your Clear Aligners.

**REQUEST NO. 10:**

Documents sufficient to show Your strategies, plans, and/or efforts to compete with other products used to correct malocclusion in the United States, including other Clear Aligner Products, traditional braces, sublingual braces, and/or other products.

**REQUEST NO. 11:**

Documents sufficient to show surveys, studies, analyses, evaluations, or reports Concerning the market share of Clear Aligner Products available for sale and purchase in the United States, including Documents Relating to the total addressable market or total available market that includes Clear Aligner Products encompassing any part of the United States.

**REQUEST NO. 12:**

Documents sufficient to show the indications for which Your Clear Aligners have received U.S. Food and Drug Administration approval, including any predicate and reference device(s).

**REQUEST NO. 13:**

Documents sufficient to show Your contracts, partnerships, agreements, or arrangements with Dental Service Organizations ("DSOs"), distributors, dental labs, and/or other entities Relating to sales, marketing, or use of Your Clear Aligners in the United States.

**REQUEST NO. 14:**

Documents sufficient to show the current or potential means of distribution for Your Clear Aligners in the United States.

**REQUEST NO. 15:**

Documents sufficient to show, stated separately, Your quarterly and annual costs related to manufacturing Your Clear Aligners.

**REQUEST NO. 16:**

Documents sufficient to show, stated separately, Your quarterly and annual spend related to marketing Your Clear Aligners in the United States, including spend for traditional marketing, print marketing, new and social media marketing, spokespersons and endorsements.

**REQUEST NO. 17:**

Documents sufficient to show, stated separately, Your quarterly and annual profit margins for Your Clear Aligners in the United States.

**REQUEST NO. 18:**

Documents sufficient to show the rules and features of any loyalty or rewards program You offer in the United States, including any tiers or levels and associated benefits or discounts.

**REQUEST NO. 19:**

Documents sufficient to show, stated separately (1) by year and by month, the number of members in any loyalty or rewards program in the United States (stated separately for each tier or level); and (2) the number of dentists, orthodontists, or distributors in the United States that made at least one purchase from You in 2020.

**REQUEST NO. 20:**

Documents sufficient to show the product characteristics of Your Clear Aligner,

including changes in those product characteristics over time.

**REQUEST NO. 21:**

Documents Concerning or Relating to complaints made to You by any Person or Entity Concerning Your Clear Aligner Products, including any concerns expressed about product features or performance, Your customer service, the product's warranty, or the product's price.

**REQUEST NO. 22:**

Documents Concerning or Relating to internal discussions, analyses, or Communications Concerning sales, marketing, or competition in the United States between manufacturers, sellers, distributors, and suppliers of Clear Aligner Products.

**REQUEST NO. 23:**

Documents Concerning or Relating to comparisons of Your prices, pricing plans, profits, discounts, promotions, rebates, marketing practices, sales practices, conditions of sale, or product development with any other Entity or Person that sells Clear Aligner Products in the United States.

**REQUEST NO. 24:**

Complete electronic data underlying invoices (in a machine-readable format such as *.csv, *.txt, *.xls) for sales of Clear Aligner Products billed in the United States by You. Data for each transaction should include, but are not limited to, the following characteristics:

    A.    Date of each transaction, including but not limited to the date of order, date of invoice, and date of provision. Any unique numbers that identify the transactions, as well as any associated invoice number or purchase order number.

    B.    Bill-to Customer and Ship-to information, including name; any identifying customer number; geographic location (address, state, country); any customer classification information; and distribution channel.

C. Product information, including unique identifier of product; name; description; any fields containing product characteristics; and product line/family.

D. Transaction volume or quantity (i.e. units sold or returned).

E. Transaction amount in dollars, including identification of any discount, rebate, or other adjustment to the final price of the product.

F. Unit price in dollars.

G. Any associated contract number(s) or other means to identify the contract pursuant to which the transaction was made.

H. Contract terms associated with transactions (e.g. duration, minimum volume or share of purchases, and provisions related to exclusivity or preferred status, etc.).

I. Any measure of margins earned on sales, including without limitation gross margins.

**REQUEST NO. 25:**

Documents sufficient to show any analyses, surveys, plans, evaluations, reports, or research that You performed, created, paid for, or relied on in connection with or which otherwise influenced or informed Your decision to introduce a Clear Aligner Product for sale in the United States, including any perceived barriers to entry or forecasts for future sales growth in the United States.

**REQUEST NO. 26:**

Documents sufficient to show Your Clear Aligner's estimated share of the global market that includes Clear Aligner Products, including how Your estimated global market share has changed on an annual basis, and any forecasts for future market share growth globally.

**REQUEST NO. 27:**

Documents sufficient to show what Your anticipated annual production volume will be for Clear Aligner Products intended to be sold in the United States for the next five years.

**REQUEST NO. 28:**

Documents sufficient to show what the anticipated percentage of Chuangmei Center's production capacity will be for Clear Aligner Products to be sold in the United States when the Chuangmei Center is fully commissioned in December 2023.

**REQUEST NO. 29:**

Documents that support the statement that Angelalign believes it is "well positioned to capture the upside potential of the enormous market and continue to increase our market share.worldwide." *See* Application Proof of Angelalign Technology Inc. at p. 108, available at:

https://www1.hkexnews.hk/app/sehk/2021/103149/documents/sehk21012901706.pdf.

**REQUEST NO. 30:**

Documents sufficient to show how Angelalign plans "to pursue overseas expansion in both developed countries and emerging markets by preparing for intellectual property application and product registration and seeking collaboration opportunities with local sales channels", including any plans for expansion and collaboration opportunities in the United States. *See* Application Proof of AngelAlign Technology Inc. at p. 116, available at:

https://www1.hkexnews.hk/app/sehk/2021/103149/documents/sehk21012901706.pdf.

**REQUEST NO. 31:**

Documents sufficient to show how Angelalign is "poised to replicate our success in the global clear aligner market", including any analyses, surveys, plans, evaluations, reports, or research that You performed, created, paid for, or relied on in connection with AngelAlign's decision-making related to expanding sales to the United States and globally. *See* Application

Proof of AngelAlign Technology Inc. at p. 2, 107, available at:

https://www1.hkexnews.hk/app/sehk/2021/103149/documents/sehk21012901706.pdf.

**REQUEST NO. 32:**

Documents sufficient to show Angelalign's marketing efforts with any entities in the United States, including through its cooperation with the UCLA Dental Research Service Center.

**REQUEST NO. 33:**

All documents produced to Align or counsel for Align in connection with this Matter.

**REQUEST NO. 34:**

All communications with Align or counsel for Align in connection with this Matter.